No. 01-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 115

HAROLD ENGLIN and MARY A. BROWN,

   Plaintiffs and Appellants,

  v.

BOARD OF COUNTY COMMISSIONERS,
YELLOWSTONE COUNTY, MONTANA,

   Defendant and Respondent.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and For the County of Yellowstone,
       Honorable Russell C. Fagg, Judge Presiding

COUNSEL OF RECORD:

   For Appellants:

      Kelly J. Varnes, Hendrickson, Everson, Noennig and Woodward,
      Billings, Montana

   For Respondent:

      Dennis Paxinos, County Attorney; Mark A. English, Deputy County
      Attorney, Billings, Montana

          Submitted on Briefs: January 31, 2002

               Decided: June 4, 2002

Filed:

   _____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Harold Englin and Mary Brown (Owners) appeal from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, holding that the Board of County Commissioners' (Commissioners) denial of the Owners' zone change request was not arbitrary or capricious.  We affirm.

¶2    Englin and Brown raise the following issues on appeal:

¶3    1.    Did the District Court err when it held that the Commissioners' zoning decision was not arbitrary or capricious?

¶4    2.    Did the District Court abuse its discretion by excluding evidence of a subsequent zone change application?

*Facts and Procedural Background*

¶5    Englin and Brown own three acres of land (the Property) located at 1442 Ethelyn Avenue, Billings, Montana.  They acquired the Property by inheritance in 1982, at which time the Property was zoned as Residential-9600.  This zoning classification permits single family residences with lot sizes no smaller than 9600 square feet.  The Property is bordered on the north by Beall Trucking which is zoned Highway Commercial.  To the south, the Property is bordered by a single family residence and a vacant lot, both zoned Residential-9600.  To the east is a storage barn for a local limousine service which is zoned Controlled Industrial.  To the west is the Lockwood Evangelical Church which is zoned Residential-9600.

2

¶6    In December 1989 the Owners applied for a zone change on the Property from Residential-9600 to Highway Commercial. Highway Commercial zoning classification permits commercial and service businesses intended to provide services to the traveling public. The Yellowstone County Zoning Commission (Zoning Commission) recommended that the application for zone change be granted. On December 21, 1989, the Commissioners denied the application.

¶7    In November 1997, the Owners again applied for a zone change of the Property from Residential-9600 to Highway Commercial. The Zoning Commission held a public hearing and subsequently recommended denying the application. In a letter dated December 2, 1997, the Commissioners informed the Owners that it had denied their application for a zone change.

¶8    The Owners then filed this action in the District Court, arguing that the Commis-sioners' denial of their 1997 zone change application violated their due process rights because it was arbitrary or capricious and that it constituted a taking by inverse condemnation. The Commissioners filed a motion for summary judgment and, after a hearing on the motion, the District Court granted summary judgment in favor of the Commissioners.

¶9    The Owners appealed the summary judgment to this Court. We affirmed the District Court as to the takings issue, but remanded on the substantive due process claim because the Commissioners had not issued specific findings in support of the denial of the zone change request.

3

¶10 After remittitur was filed, the District Court remanded the case to the Commissioners "to provide separate findings as to why it denied Appellants zone change request." The Commissioners provided the findings and the District Court held a hearing on the substantive due process claim on July 11, 2001. Subsequently, the court entered findings of fact and conclusions of law, dismissing the claim. The Owners appeal.

*Discussion*

¶11 Did the District Court err when it held that the Commissioners' zoning decision was not arbitrary or capricious?

¶12 We review a district court's findings of fact to determine whether they are clearly erroneous. We review a district court's conclusions of law to determine whether the interpretation is correct. *Greater Yellowstone Coalition, Inc. v. Board of County Commissioners of Gallatin County*, 2001 MT 99, ¶ 20, 305 Mont. 232, ¶ 20, 25 P.3d 168, ¶ 20.

¶13 This appeal concerns the District Court's conclusion that the Commissioners did not act arbitrarily in denying the Owners' zoning change application. The Owners essentially seek review of factual determinations by the District Court. However, if substantial evidence supports the District Court's findings and they are not otherwise clearly erroneous, we will not substitute our judgment for that of the trier of fact. *Greater Yellowstone*, ¶ 21.

¶14 The Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect persons from being deprived of life, liberty or property by state

4

governmental action without due process of law.  The guarantee of due process has both a procedural and a substantive component. Substantive due process bars arbitrary governmental actions regardless of the procedures used to implement them and serves as a check on oppressive governmental action.  *Newville v. State, Dept. of Family Services* (1994), 267 Mont. 237, 249, 883 P.2d 793, 800. An examination of whether a person's substantive due process rights have been violated requires that we decide whether the challenged governmental act is reasonably related to a legitimate governmental objective.  *Newville*, 267 Mont. at 249, 883 P.2d at 800.

¶15   Section 76-2-201, MCA, states that zoning regulations may be adopted "[f]or the purpose of promoting the public health, safety, morals, and general welfare."  Section 76-2-203(1), MCA, provides that zoning regulations must be made:

> in accordance with the growth policy and must be designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote public health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.

¶16    "The purpose of zoning is not to provide for the highest or best use of *each* particular lot or parcel of land within the zones or community, rather it is to benefit the *community generally* by the sensible planning of land uses taking into consideration the peculiar suitabilities and most appropriate use of land *throughout the community*."  *Mack T. Anderson Insurance Agency v. City of Belgrade* (1990), 246 Mont. 112, 117, 803 P.2d 648, 651 (emphasis in original).   This Court will not sit as a super-legislature or

5

super-zoning board. *Anderson Ins.*, 246 Mont. at 120, 803 P.2d at 652.

¶17 In 1989, the Zoning Commission considered the factors enumerated in § 76-2-203, MCA, and recommended that the Commissioners approve the Owners' zone change request. Although the Commissioners copied verbatim the Zoning Commission's findings, they denied the zone change request. However, not all of the findings relating to the statutory factors were positive. The findings stated that the zone change was designed in accordance with the comprehensive plan, it "should not create any more congestion in the area than what is already found until improvements of Ethelyn Avenue are made," it "possibly may not promote health and general welfare to the adjacent residential uses due to the potential increase of noise, traffic, etc.," and it may decrease the value of a nearby church and residential dwelling.

¶18 In 1997, the Zoning Commission again considered the same twelve factors after holding a public hearing and, unlike in 1989, it recommended that the application for zone change be denied. It found that the zone change "will not retain and improve existing residential neighborhoods . . . will not protect against the encroachment of incompatible or unrelated uses . . . could increase traffic in the general area . . . [and] could alter the value of buildings in the area." The Commissioners again denied the zone change request.

¶19 The Owners argue that the conflicting recommendations of the Zoning Commission in 1989 and 1997 show that the Commissioners'

6

decision was arbitrary. They state that "[p]roperty cannot rationally at one time be acceptable for a Highway Commercial zoning classification and then at another time be unacceptable when none of the adjoining uses has been altered."

¶20 County planning boards are required to make written recommendations to the Commissioners, but these recommendations are advisory only. Section 76-2-204, MCA. The Commissioners had the discretion to reject the recommendation, particularly because the 1989 findings had both negative and positive factors. The conflicting recommendations of the Zoning Commission do not establish that the Commissioners acted arbitrarily. In any event, the Commissioners had the discretion to accept or reject the planning staff's recommendation. The Owners did not appeal the Commissioners' 1989 denial, and it is not for this Court to address that decision now.

¶21 Next, the Owners argue that the following findings of fact are clearly erroneous: (1) "the Property's access is not adjacent to a primary or secondary highway as required, and, thus, the Property would be difficult to serve the needs of tourist, traveler, recreationist or the general traveling public;" (2) "granting the zone change would increase the noise and traffic in a relatively placid neighborhood;" (3) "granting the zone change would not be compatible with the majority of surrounding land uses;" and (4) "designating the Property as Highway Commercial would not be in accord with the County's Comprehensive Plan."

7

¶22 The Owners argue that the Property is only 330 feet from Highway 87 East and is located in "very close proximity to the Interstate 90, Lockwood/Billings interchange." They note that Highway Commercial zoning does not require the property to be adjacent to an interstate highway.

¶23 Englin testified that the only access to the Property is over a dirt road, the Property does not front a paved road or a major roadway and the Property is not easily accessible. A map of the area indicates as much. Therefore, after reviewing the record, we conclude that substantial evidence exists for the District Court's finding that the location of the Property would make it difficult to serve the needs of travelers.

¶24 Next, the Owners argue that noise was already a problem in the neighborhood and that the neighborhood was not "placid." Several owners of adjoining lots testified at the public hearing about the noise level from Beall Trucking and their concern that changing the zoning on the Property would increase the noise in the neighborhood. Although the evidence does not support the court's finding that the neighborhood is "placid," substantial evidence exists to support the finding that the zone change would increase noise and traffic in the neighborhood.

¶25 The Owners argue that the Property is surrounded on three sides by commercial use and the finding that the zone change is not compatible with the majority of surrounding uses is "simply wrong. It is a whitewash."

¶26 The evidence before the Commissioners and before the District Court established that the Property is surrounded on one side by high intensity commercial use and on three sides by either low intensity commercial use or residential use. One neighbor testified before the Commissioners that he uses his property to produce "a large amount of produce of garden vegetables." A representative from the Lockwood Community Church testified that the church's playground is adjacent to the Property. The church also maintains a softball field and a volleyball court near the Property.

¶27 After reviewing the record, we conclude that substantial evidence supports the District Court's finding that the zone change would not be compatible with the majority of the surrounding land uses.

¶28 Finally, the Owners argue that the Zoning Commission's finding in 1989 that the zone change accords with the Comprehensive Plan supports their contention that the 1997 finding is erroneous. In 1989, the Zoning Commission stated that "the Billings Area Comprehensive Plan shows this particular location as being an area that is <u>not</u> suitable for cropland. . . . The use of this land is currently transitional in nature. A few head of cattle are presently grazing on this piece of ground." In 1997, the Zoning Commission stated, "The new zoning will not retain and improve existing residential neighborhoods. The new zoning will not protect against the encroachment of incompatible or unrelated uses."

9

¶29 As stated previously, the record shows the majority of the surrounding land usage is residential or low intensity commercial use. A designation of the Property as Highway Commercial would not retain or improve the character of this area.

¶30 This sentiment was reflected at the hearing before the Commissioners. The Commissioners seemed to agree that Residential-9600 was not the appropriate zoning for the Property. Their concern, though, centered around the wide gap between Residential-9600 zoning and Highway Commercial zoning. The senior planner for the county noted that "there's a wide range of other zoning districts; multi-family or light commercial that maybe the applicant can pursue."

¶31 After reviewing the record, we conclude that substantial evidence supports the District Court's finding that the zone change would not be in accord with the County Comprehensive Plan.

¶32 We conclude that the District Court correctly held that the Commissioners adequately considered the statutory factors, that the Commissioners properly based their decision on the statutory factors and that the Commissioners' decision was reasonably related to the legitimate governmental objective of promoting public health, safety and welfare. We hold that the Commissioners' denial of the Owners' zone change application was not arbitrary or capricious.

¶33 Did the District Court abuse its discretion by excluding evidence of a subsequent zone change application?

¶34 The Owners argue that the District Court abused its discretion by refusing to hear testimony and receive exhibits concerning a zone change application that they submitted to the Commissioners on the same property in July 2000. This zone change application requested a less intense commercial designation than the commercial designation sought in the present case, yet it was also denied. The Owners argue that this evidence was relevant because it showed "the continued intent by the Commissioners to act arbitrarily concerning the property at bar."

¶35 The Commissioners argue that what occurred three years after the decision in this case is not relevant to the issue of whether the Commissioners acted arbitrarily or capriciously in 1997.

¶36 The District Court excluded the evidence of the subsequent zone change request, stating that the case had been ongoing since 1997 and had been before the Supreme Court and that "if I allowed you now to go beyond the information that the Supreme Court had, that Judge Baugh had, really would be a new case."

¶37 Rule 401, M.R.Evid., provides that relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶38 Whether evidence is relevant and admissible is left to the sound discretion of the district court, and the determination will not be overturned on appeal absent an abuse of that discretion. *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, ¶ 14, 30 P.3d 326, ¶ 14. "The question is not whether this Court would have

11

reached the same decision, but, whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Lopez*, ¶ 14.

¶39 On remand, this Court noted that, "Without any separate findings made by the Board in support of its denial of Appellants' zone change request, we are unable to determine the basis of the Board's consistent denial." Therefore, the District Court remanded the case to the Commissioners, directing them to issue specific findings supporting their denial of the zone change request in 1997. Under these circumstances, we agree that evidence concerning a 2000 zone change request was irrelevant and immaterial to the question before the District Court-that is, whether the Commissioners acted arbitrarily or capriciously in denying the zone change request in 1997. We also agree with the District Court that injecting the 2000 request into this proceeding would be tantamount to amending the petition and that would be inappropriate at this late date.

¶40 We conclude that the District Court did not abuse its discretion by excluding evidence of the subsequent zone change application.

¶41 The District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER

12