Judge ALLARD, concurring.
I agree with the majority decision that Tanner's electronic monitoring program was insufficiently restrictive to qualify for credit under AS 12.55.027(d). I write separately only to make clear that, in my view, our decision is limited to the facts presented in this case and that a defendant whose monitoring program includes very limited and highly circumscribed passes specifically to obtain groceries (or other essential items of daily living such as medication) should not necessarily suffer the same disqualification.
In its briefing, the State concedes that "[t]he legislature probably intended that defendants on electronic monitoring receive credit against their sentences when they receive passes to go grocery shopping." The State bases this concession on the underlying purpose of AS 12.55.027(d), which is "to facilitat[e] independent living" and help defendants get "back on track" by allowing them to "gain access to community-based treatment, maintain employment, access diverse medical treatment, perform community service work, and begin the process of reintegration."[1] The State nevertheless argues that passes for grocery shopping are prohibited because they are not specifically enumerated in the statute.
But our underlying goal when we construe a statute is to determine legislative intent and, if possible, to implement that intent.[2] We are also required to construe statutes to avoid absurd results.[3] Although AS 12.55.027(d) does not directly refer to grocery shopping, the statute does refer to passes for "attending a rehabilitative activity or medical appointment." Presumably a pass to attend a medical appointment would also include a pass to obtain the medication prescribed at such an appointment. And if a person is permitted to go to a pharmacy to obtain medication, it is not clear why the *1065 person should not be permitted to go to the grocery store to obtain the nutritional sustenance required to perform all of the other rehabilitative activities contemplated by the statute.
The majority opinion rejects the notion that grocery shopping can constitute a "rehabilitative activity" on the ground that a person does not "attend" such an event. But I see no reason why a limited pass to go grocery shopping cannot be structured to ensure the same sort of accountability and oversight present in other types of rehabilitative activities.
However, here, the record indicates that Tanner was permitted essentially four hours of unregulated passes a week under the terms of his electronic monitoring contract. Although the parties repeatedly referred to this free time as time set aside for "grocery shopping," the reality is that there were very few restrictions on Tanner's use of this time. Indeed, Tanner's personal log indicates that he spent a significant amount of this time at a car repair shop with multiple visits on multiple days to this same shop, apparently due to recurring mechanical problems with his car.
Given the record before us, I agree with the majority that Tanner is not entitled to credit against his sentence under AS 12.55.027(d), but I also believe that our decision should be read narrowly and limited to the specific facts presented here.

Minutes of House Judiciary Comm., House Bill 15, statement of Representative Tammie Wilson (Feb. 20, 2015 at 1:56:23 p.m.); Minutes of House Judiciary Comm., House Bill 15, statement of Representative Tammie Wilson (Mar. 18, 2015 at 1:08:07 p.m.) (goal of electronic monitoring is to allow "defendants to keep their jobs, and receive treatment, while awaiting trial to help them get back on track").

Brown v. State , 404 P.3d 191, 193 (Alaska App. 2017) ; Y.J. v. State , 130 P.3d 954, 959 (Alaska App. 2006).

Miller v. State , 382 P.3d 1192, 1197 (Alaska App. 2016) ("A court should not construe statutes in a way that leads to unfair or incongruous results, or in a manner which yields results that are inexplicably draconian or that have no discernible purpose.") (internal citations omitted); Williams v. State , 853 P.2d 537, 538 (Alaska App. 1993) ("[A] court is obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute.") (internal citations omitted).